UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| VINA BUNCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:02-CV-462 |
| | ) | (VARLAN/GUYTON) |
| LIBERTY LIFE ASSURANCE | ) | |
| COMPANY OF BOSTON and | ) | |
| REXNORD CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on two motions: plaintiff's Motion for Judgment on the Administrative Record [Doc. 20] and defendants' second Motion for Judgment as a Matter of Law [Doc. 22]. The Court previously ordered [Doc. 7] that plaintiff's claim under the long-term disability insurance policy issued by defendant Liberty Life Assurance Company ("Liberty Life") would be held in abeyance until plaintiff's claim under the short-term disability plan issued by defendant Rexnord Corporation ("Rexnord") was resolved by the Court. Accordingly, review of defendants' short-term disability determination is the only matter before the Court. The parties have fully briefed the issues [Docs. 23, 24, 25], and this matter is ripe for review. Plaintiff's claim for benefits is under an employee benefit plan established pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). As such, the Court exercises federal question jurisdiction over this matter. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).

Plaintiff argues in her motion that defendants' decision to terminate her short-term disability benefits was arbitrary and capricious.[1] Defendants argue that plaintiff's short-term disability benefits were terminated because she failed to submit any evidence showing that she had a "continued disability," as is required to receive benefits under the short-term disability plan. [Doc. 12 at 7-8.] Defendants also state that plaintiff and Rexnord settled a workers' compensation claim filed by plaintiff and argue that plaintiff's claim for short-term disability benefits is barred by the workers' compensation exclusion in that plan. [Doc. 23 at 1-3.] For the reasons set forth herein, the Court will deny plaintiff's motion for judgment on the administrative record and grant defendants' motion for judgment as a matter of law.

I.      **Relevant Facts**

Defendant Rexnord Corporation ("Rexnord") employed plaintiff, Vina Bunch, beginning on April 10, 1975 as a bearing assembler. [AR at 169.] As an employee of defendant Rexnord, plaintiff was covered under the BTR Short Term Disability Benefits Plan (the "Plan"), which was administered by defendant Liberty Life Assurance Company of Boston ("Liberty Life"). [*Id.*] Pursuant to the Plan, plaintiff received short term disability benefits from September 17, 2001 until January 1, 2002 for vertigo caused by a viral inner ear infection. [AR at 82.] Plaintiff returned to work on January 2, 2002 and her short-term

---

[1] The Court notes that, because both parties agree that the applicable standard of review in this case is *de novo*, [Doc. 12 at 2; Doc. 20 at 2], the correct inquiry is in fact the less deferential question of whether defendants' decision to terminate plaintiff's benefits was correct. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808 (6th Cir. 2002).

disability benefits were terminated on the basis of the Plan's requirement that an individual disabled to receive benefits. [AR at 6, 82.] The Plan defines disability as meaning that the covered individual is "unable to perform all of the material and substantial duties of [his or her] occupation on an Active Employment basis because of an Injury or Sickness." [AR at 4.]

Plaintiff continued working until January 23, 2002, at which point she visited her treating physician, Dr. Howard B. McNeeley, who advised her to stay home from work due to high blood pressure. [AR at 117]. In the note in which Dr. McNeeley made this recommendation, he wrote that plaintiff "is convinced that something she is breathing at work causes her blood pressure to go up," but no definitive reason for or details concerning this diagnosis are given. [AR at 117.] On February 6, 2002, Dr. McNeeley sent defendant Rexnord a letter stating that plaintiff "will need a family medical leave of absence for three months beginning February 4, 2002 until May 4, 2002." [AR at 77.] The letter also gives no reason or detail as to this diagnosis.

On January 31, 2002, plaintiff's attorney faxed defendant Liberty Life a letter stating that "Ms. Bunch's claim should not have been denied because of the additional medical information you have received from her treating physician, Dr. Howard McNeeley, as well as the additional medical information which we are now providing you." [AR at 86.] The records submitted along with this letter detail various conditions suffered by plaintiff from 1999 to 2000, including heart palpitations and asthma, but do not appear to relate to the ear infection that led to her short term disability award for the period between September 2001

3

and January 2002. [AR at 89-115.] While plaintiff's attorney suggested that these ailments were responsible for Dr. McNeeley's decision to advise plaintiff to take an absence from work, [AR at 87], there is no indication from Dr. McNeeley's records or the records attached to the January 31, 2002 letter that there was any kind of connection between plaintiff's condition in 1999 and 2000 and her condition in January 2002.

On February 4, 2002 and February 5, 2002, defendant Liberty Life sent plaintiff two letters informing her that her claim for continued disability benefits was being denied and detailing the reasons for that denial. [AR at 80, 82.] Specifically, plaintiff's claim was denied because she had not submitted proof indicating that she was severely limited in performing her job duties due to the hypertension she was allegedly experiencing, [AR at 82], and because it appeared, based upon Dr. McNeeley's statement in his January 23, 2002 notes, that plaintiff believed something at work was causing her blood pressure to go up and that plaintiff was therefore attempting to recover disability benefits related to her job environment, which is excluded under the Plan. [AR at 83.] The February 5, 2002 letter goes on to quote the language from the Plan that stipulates that "[a] Weekly Benefit will not be payable if you become Disabled due to: (a) an Injury that arises out of or in the course of employment." [AR at 7.]

On February 8, 2002, plaintiff's attorney sent defendant Liberty Life a letter in response to this denial and included with it additional medical reports concerning plaintiff. [AR at 50-72]. This letter also stated that another doctor "agrees that Ms. Bunch needs to be restricted from extremes of temperature or humidity and free from dust irritants, fumes,

4

and smoke which are present in her work environment" but that "he does not feel that her problems are work related." [AR at 50.] The Court notes that the attached medical reports are dated October 25, 1999 [AR at 69], October 11, 2000 [AR at 59] and December 4, 2000 [AR at 57.] In response, defendant Liberty Life sent plaintiff's attorney a letter on March 27, 2002, stating that "[t]he basis for our denial was outlined in our February 5, 2002 letter," [AR at 42], and emphasizing that plaintiff's benefits were terminated because of "the absence of medical documentation to support total disability." [AR at 43.] This letter also noted that the medical records submitted with the February 8, 2002 letter were approximately two years old and therefore were not the kind of "recent medical documentation" needed to support plaintiff's claim that she was currently disabled. [*Id.*]

Next, on April 9, 2002, plaintiff's attorney faxed a letter to defendant Liberty Life, to which was attached a medical report from Dr. C.M. Salekin, a neurologist, which plaintiff's attorney claims was undertaken on March 28, 2002. [AR at 23.] However, the Court notes that, save for the date, this report [AR at 24-28] is identical to one attached to plaintiff's January 31, 2002 letter, but dated October 25, 2001 [AR at 111-115.][2] In response, defendant Liberty Life sent plaintiff's attorney a letter on April 16, 2002 again asserting that plaintiff's claim was denied on the basis of "medical records contained in the file." [AR at 21.]

---

[2]The identicalness of these reports includes reference to plaintiff's age, which both reports state as being 49 [AR at 24, AR at 111], although plaintiff would have been 51 at the time the March 28, 2002 report was undertaken.

Plaintiff filed suit against defendants on July 17, 2002 in the Chancery Court for Campbell County, Tennessee alleging that defendants violated ERISA in terminating her disability benefits. Defendants removed the case to this Court on August 19, 2002 on the basis of federal question jurisdiction. [Doc. 1.]

During this time, plaintiff was also pursuing a workers' compensation claim against defendant Rexnord in the Chancery Court for Campbell County, Tennessee in which plaintiff alleged she was exposed to chemicals during the course of her employment that resulted in her suffering occupational asthma and cardiac arrhythmia.[3] [Doc. 19, Ex. 2 at ¶¶ 3-4.] That lawsuit resulted in settlement of plaintiff's claim on June 29, 2005 for the lump sum of $50,000. [*Id.* at ¶ 6.] The Court notes that in approving the settlement, the Campbell County Chancery Court nevertheless commented on the "doubtful and disputed nature of Plaintiff's claims." [*Id.*]

On March 22, 2004, this case was remanded to defendants by order of the Court [Doc. 16] on the basis of newly discovered evidence, including a notice of an award to plaintiff from the Social Security Administration dated June 6, 2004, that the Court determined merited additional consideration by defendants. Defendants claim that following this remand, "no additional documents or items of evidence were submitted to the defendants for reconsideration of the plaintiff's claim for short term disability benefits." [Doc. 19 at 1.] Accordingly, defendants again denied plaintiff's claim on June 2, 2005, both on the basis of

---

[3]Plaintiff filed that lawsuit on January 21, 2000. [Doc. 19, Ex. 2 at ¶ 3.]

6

the administrative record and "based upon the plan administrator's knowledge at that time of the settlement of plaintiff's workers' compensation claim against the plan administrator as her employer." [*Id.* at 1-2.]

In her motion for judgment on the administrative record, plaintiff alleges wrongful denial of disability benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) [Doc. 20]. Defendants have moved for judgment as a matter of law [Doc. 22].

**II. Discussion**

A. Standard of Review

The parties agree that the applicable standard of review in this case is *de novo*, [Doc. 12 at 2; Doc. 20 at 2], given that there is no provision in the short term disability plan expressly giving the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 613 (6th Cir. 1998). When applying a *de novo* standard in the ERISA context, the Sixth Circuit has held that the role of the court "reviewing a denial of benefits is to determine whether the administrator...made the correct decision." *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808 (6th Cir. 2002) (internal quotations removed). The decision of the administrator is not accorded a presumption of correctness or deference. *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990). In undertaking this *de novo* review of a denial of benefits, "the district court is strictly limited to a consideration of the information actually

considered by the administrator." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry*, 900 F.2d at 966).

In interpreting a disability plan within the context of ERISA, the Court applies "federal common law rules of contract interpretation in making [a] determination." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). "The general principles of contract law dictate that [the Court] interpret the Plan's provision s according to their plain meaning, in an ordinary and popular sense." *Id.* In doing so, the Court "gives effect to the unambiguous terms of the contract" in determining whether the denial of benefits was proper under the terms of the plan in question. *Id.*

B. Relevant Terms of the Plan

Within the section entitled "Termination of your Disability Benefit," the Plan provides that "[t]he Weekly Benefit will cease on the earliest of: (1) the date you are no longer Disabled." [AR at 6.] The Plan defines "disability" or "disabled" as being "unable to perform all of the material and substantial duties of your occupation on an Active Employment basis because of an Injury or Sickness." [AR at 4.] Additionally, the "General Provision" section of the Plan stipulates that "[p]roof of your continued Disability, and regular attendance of a Physician, must be given to the Sponsor within 30 days of the request for proof." [AR at 8.] The Plan then states that "[t]he proof must cover: (i) the date your Disability started; (ii) the cause of your Disability; and (iii) the degree of your Disability." [AR at 8.] As to when claims are paid, the Plan provides that "[w]hen the Sponsor receives satisfactory proof of

8

your claim, the benefits payable under this Plan will be paid at least monthly...during any period for which the Sponsor is liable." [AR at 8.]

Under the "General Exclusions" section of the Plan, the subsection entitled "Disability Benefit Exclusions" provides the following:

> A weekly benefit will not be payable if you become Disabled due to: (a) Injury that arises out of or in the course of employment; or (b) Sickness when a benefit is payable under a Workers' Compensation Law, or any other act or law of like intent.

[AR at 7.] The Plan defines "injury" as "bodily impairment resulting directly from an accident and independently of other causes," [AR at 4], and "sickness" as "illness, disease, pregnancy, or complications of pregnancy." [AR at 5.]

C. Analysis

The record contains a large amount of medical evidence upon which the decision to terminate plaintiff's benefits was granted. However, determination of whether defendants wrongly terminated plaintiff's disability benefits turns on two issues: (1) whether plaintiff was disabled under the terms of the Plan and (2) whether plaintiff's workers' compensation settlement with defendant precludes her from receiving benefits under the Plan. The Court will address these two issues in turn.

First, based upon the plain language of the Plan, defendants were justified in terminating plaintiff's disability benefits once she returned to work on January 2, 2002, and continued working until January 22, 2002. [AR at 117-18.] Because plaintiff was apparently able to do enough of her job to merit returning to work in January 2002, she necessarily was not unable to perform all of the material and substantial duties of her job.

9

Accordingly, she was not disabled within the meaning of the Plan and defendants were therefore warranted in ceasing to pay her disability benefits given that the Plan explicitly provides that "[t]he Weekly Benefit will cease on the earliest of...the date you are no longer Disabled." [AR at 9.]

Additionally, the Court has carefully reviewed the administrative record and can not find that plaintiff submitted any evidence constituting sufficient proof of a disability past January 1, 2002. Plaintiff attempts to rely upon medical records submitted to defendant Liberty Life by her lawyer on January 31, 2002 to prove she was disabled at that time, but those records pertain to respiratory and heart conditions she had investigated in 1999 to 2000. [AR at 57-72.] As such, they are irrelevant to the determination of whether defendants' refusal to reinstate plaintiff's benefits after January 2002 was warranted. Absent proof of a disability, which requires submission of the date the disability started, the cause of the disability and the degree of the disability, [AR at 8], the Plan makes it clear that disability benefits will not be paid out. [AR at 6, 8.] However, there is simply no such proof in the record as to the period for which plaintiff seeks disability benefits. Accordingly, defendants were correct in their decision to terminate and refuse to extend plaintiff's short-term disability benefits on the basis of this lack of proof.

Even if plaintiff had submitted sufficient proof of a disability for the time period beginning in January 2002, however, award of disability benefits would be precluded by the Plan's explicit exclusion of claims otherwise covered by workers' compensation. As mentioned above, the plan provides that a benefit will not be payable where disability is due

to "Sickness when a benefit is payable under a Workers' Compensation Law, or any other act or law of like intent." [AR at 7.] As the record shows, plaintiff was awarded $50,000 in connection with the settlement of her workers' compensation lawsuit filed against defendant Rexnord. [Doc. 19, Ex. 2.] That suit appears to have involved the same claim of cardiac arrhythmia and occupational asthma for which plaintiff now seeks short-term disability benefits beginning in January 2002. [*See id.* at ¶ 4.] In fact, plaintiff seems to have submitted the same medical reports from Dr. Arnold Hudson and Dr. Salekin in that case [Doc. 19, Ex. 2 at ¶ 4] as she did to support her claim here [AR at 59-65, 111-115]. Therefore, this claimed condition is clearly one that was "payable under a Workers' Compensation Law" and accordingly would not support an award of disability benefits under the Plan, even assuming that plaintiff had submitted adequate proof of its continued existence in 2002. The Plan makes no distinction as to when that workers' compensation benefit was paid, nor the manner through which it was awarded, be it through settlement of a lawsuit, as was the case here, or otherwise. Rather, the plain language of the Plan simply provides that no benefits will be paid out on a disability compensable under workers' compensation laws and the like. [*Id.*] As such, defendants were correct in determining that plaintiff's claim for short-term disability benefits for the January 2002 period onward is also barred by the Plan's workers' compensation exclusion.

Plaintiff's argument in response to defendants' motion for judgment as a matter of law that she did not actually receive a benefit payable under a workers' compensation law [Doc. 24 at 2-3] is not persuasive. While plaintiff does not exactly articulate why this would be the

11

case, the Court assumes this argument is grounded in the notion that because plaintiff's workers' compensation benefits were awarded as a result of a settlement, that plaintiff does not fall within that exclusion. However, as noted above, the Plan's exclusion is not limited in such a way.

Additionally, plaintiff's argument that defendants are collaterally estopped from arguing that the award of workers' compensation to plaintiff bars award of short-term disability benefits because they previously argued that plaintiff's claims were not compensable under the Tennessee Workers' Compensation Act [id. at 5-7] is similarly unavailing. Under collateral estoppel, or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Montana v. United States*, 440 U.S. 147, 153-54 (1979). When the prior judgment was entered in state court, as it was here, that judgment is entitled to the same preclusive effect that it would receive under the law of the state where it was entered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-85 (1984). Here, defendants are not attempting to re-litigate the issue of whether plaintiff is entitled to workers' compensation; defendants in fact accept that decision of the Chancery Court of Campbell County. [Doc. 23 at 2.] Instead, they are simply arguing that the award of workers' compensation to plaintiff through the settlement agreement precludes an award of short-term disability benefits under the Plan at issue in this case. There is no reason that defendants cannot now rely upon the fact that

plaintiff's workers' compensation claim against defendant Rexnord was settled in resolving this lawsuit.

### III.     Conclusion

For the reasons set forth herein, plaintiff's Motion for Judgment on the Administrative Record [Doc. 20] is **DENIED**, defendants' second Motion for Judgment as a Matter of Law [Doc. 22] is **GRANTED**, and judgment will be entered in favor of defendants.

The Clerk is directed to entered judgment accordingly.

                                                                    s/ Thomas A. Varlan
                                                                    UNITED STATES DISTRICT JUDGE